IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00433-KLM

JOSHUA LEBEY GOLDSWORTH,

      Applicant,

v.

EIGHTH JUDICIAL DISTRICT, LARIMER COUNTY, COLORADO, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

**MAGISTRATE JUDGE KRISTEN L. MIX**

      This case is before this Court pursuant to the Order of Reference entered May 7, 2015, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge.  (*See* ECF No. 17)[1].

      Applicant Joshua LeBey Goldsworth is serving a five-year sentence of supervised probation resulting from a jury verdict finding him guilty of one misdemeanor count of promotion of obscenity, Colo. Rev. Stat. § 18-7-102(2).  In this action for a writ of habeas corpus governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, Mr. Goldsworth maintains that his conviction in Larimer County Court case number 10M1711 was unconstitutionally obtained.

## I.  BACKGROUND

      The Larimer County District Court, sitting in its appellate capacity, summarized the

---

[1] "ECF No. 17" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

factual background and procedural history of Mr. Goldsworth's case as follows:

On May 19, 2010, Appellant was using a school computer in the Shepardson Computer Hall on the Colorado State University campus. Appellant accessed a number of pornographic websites while logged into the University computer. Appellant printed several pornographic images using the printers in the Shepardson Computer Hall. Appellant printed thirty-three images while using the University computer. Appellant printed thirty of the images on a color printer that required the user to log in to a print kiosk and confirm each document to be printed. The other three pictures were sent to black and white printers that did not require the user to confirm each document to be printed. These black and white printers would queue print tasks from multiple users in the computer lab, and would continually print while there were documents in the queue. It was common for users to have to sort through a stack of printed material to retrieve their documents. When Appellant printed the pornographic images to the black and white printer, they were intermingled with other users' documents in the stack of printed material. As these other users would sort through the stack to retrieve their documents, they reviewed Appellant's pornographic pictures.

The People initially charged Appellant with one count of Harassment, and he entered a plea of not guilty. Prior to trial, the People added two counts: Computer Crime and Promotion of Obscenity. Appellant moved to dismiss the Promotion of Obscenity charge. After a hearing, the county court denied the motion to dismiss, by order dated March 25, 2011. The People dismissed the Computer Crime charge prior to trial. Appellant was tried on the remaining two counts. On April 26, 2011, the jury found Appellant guilty of the Promotion of Obscenity charge, but not guilty of the Harassment charge.

Appellant sought appellate relief in 2011, but that appeal was dismissed as untimely. Appellant then sought post-conviction relief based on his trial counsel's failure to perfect his appeal. The People conceded that this relief was appropriate and Appellant's right to pursue a direct appeal was reinstated. This appeal followed.

Appellant now raises the following issue on appeal:

1. Whether the trial court erred in failing to dismiss the charge of promotion of obscenity, as a matter of law, where an item of legal, readily accessible pornography formed the factual basis for the charge?

2. Whether prosecutorial misconduct, in repeatedly misstating the law regarding the obscenity standard, entitles [Appellant] to a new trial?

> 3. Whether sufficient evidence was presented, as a matter of law, to
> sustain [Appellant's] conviction for promotion of obscenity?

*People v. Goldsworth*, No. 13CV30279, slip op. at 1-3 (Larimer County District Court, Dec.

2, 2013) (ECF No. 25-4, at 1-3).

The Larimer County District Court affirmed the judgment of conviction imposed by

the county court.  (ECF No. 25-4, at 11).  Mr. Goldsworth attempted to file an appeal with

the Colorado Court of Appeals, but the appeal was dismissed for lack of jurisdiction

because the case was initially appealed from the county court to the district court.  *People*

*v. Goldsworth,* No. 2014CA38, slip op. at 1 (Colo. App. Jan. 10, 2014) (ECF No. 25-8, at

1).  On November 17, 2014, the Colorado Supreme Court denied Mr. Goldsworth's petition

for writ of certiorari on direct appeal.  (ECF No. 25-6).

Mr. Goldsworth initiated this habeas corpus action on March 2, 2015 by filing *pro se*

an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) ("the

Application").  Respondents have filed an Answer to the Application for Writ of Habeas

Corpus (ECF No. 25) ("the Answer").  No reply has been filed.

The Court must construe the Application filed by Mr. Goldsworth liberally because

he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)

(per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court

should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

In the Application, Mr. Goldsworth asserts three claims for relief.  First, Mr.

Goldsworth contends that Colorado's promotion of obscenity statute, Colo. Rev. Stat. § 18-

7-102(2), is unconstitutionally overbroad and vague ("Claim 1(a)").  (ECF No. 1, at 12-14).

He further asserts, in the alternative, that the statute was unconstitutionally applied to him

because there was insufficient evidence that he possessed "the requisite culpable mental state of 'knowingly' promoting the material in question" ("Claim 1(b)"). (*Id.,* at 14-18). Mr. Goldsworth next contends that the state courts erred in finding no prosecutorial misconduct when the prosecution repeatedly misstated the "contemporary community standard" ("Claim 2"). (*Id.,* at 19-22). Finally, Mr. Goldsworth asserts that the evidence admitted at trial was insufficient to sustain his conviction because there was no evidence that he promoted obscene material ("Claim 3"). (*Id.,* at 23-25).

Claim 1(b), the as-applied constitutional challenge, and Claim 3, the insufficient evidence challenge, both turn on whether the evidence presented at trial failed to prove that Mr. Goldsworth promoted obscene material with a culpable mental state. Accordingly, the Court will construe these claims together as an attack on the sufficiency of the evidence to sustain Mr. Goldsworth's conviction for promotion of obscenity. *See Agan v. Vaughn*, 119 F.3d 1538, 1544 (11th Cir. 1997) (recognizing that habeas petitioner's as-applied challenge turned on whether there was sufficient evidence of corrupt intent); *see also Medlock v. Ward*, 200 F.3d 1314, 1321-22 (10th Cir. 2000) (rejecting habeas petitioner's as-applied challenge to the sentence aggravator because the evidence was sufficient to support the constitutionality of the sentencing court's application of the sentence aggravator).

Based upon the Court's careful review of the state court record, and applying the deferential standard of review mandated by the AEDPA, the Court concludes that no reasonable juror could find that the evidence admitted against Mr. Goldsworth at trial established that he was guilty of promotion of obscenity beyond a reasonable doubt, and that the Larimer County District Court's conclusion to the contrary is an unreasonable

application of clearly established Supreme Court precedent. Therefore, the Court finds that Mr. Goldsworth is entitled to a writ of habeas corpus as to Claims 1(b) and 3 in the Application.

## II. STANDARD OF REVIEW

The AEDPA provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Goldsworth bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Goldsworth seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not

have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1).  *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would

conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006).  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Goldsworth bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

When a claim was not decided on the merits by the state court, and it is not procedurally barred, the Court addresses it de novo. *Gipson v. Jordan,* 376 F.3d 1193, 1196 (10th Cir. 2004).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about

the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v.*

*McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly

balanced that [the Court is] in virtual equipoise as to the harmlessness of the error."

*O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon

a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179

(10th Cir. 2000).

The United States Supreme Court has stated that evidence of guilt is sufficient if

"viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also In re Winship,* 397 U.S. 358, 364

(1970) (holding that the Fourteenth Amendment's Due Process Clause protects a criminal

defendant against conviction "except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged."). "This familiar standard gives

full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

*Jackson,* 443 U.S. at 319.

> While the jury may draw reasonable inferences from direct or circumstantial
> evidence, an inference must be more than speculation and conjecture to be
> reasonable . . .   A jury will not be allowed to engage in a degree of
> speculation and conjecture that renders its finding a guess or mere
> possibility.  Such an inference is infirm because it is not based on the
> evidence.

*Torres v. Lytle,* 461 F.3d 1303, 1313 (10th Cir. 2006) (quoting *United States v. Jones,*

44 F.3d 860, 865 (10th Cir. 1995)).

"Sufficiency of the evidence is a mixed question of law and fact." *Maynard*, 468 F.3d

at 673.  The federal habeas court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts."  *Id.*  Because this Court reviews the state court's sufficiency of the evidence decision under the highly deferential standard of the AEDPA, the Court must determine whether the Larimer County District Court's decision was based on an unreasonable determination of the facts in light of the evidence presented and whether the Larimer County District Court reasonably decided that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson,* 443 U.S. at 319.

## III.  DISCUSSION

### A.    Promotion of Obscenity

The statute, Colo. Rev. Stat. § 18-7-102, under which Mr. Goldsworth was convicted provides, in relevant part:

(2)(a) . . . [A] person commits promotion of obscenity if, knowing its content and character, such person:

(I) Promotes or possesses with intent to promote any obscene material;

Colo. Rev. Stat. § 18-7-102(2)(a).

"Promote" is defined as "to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same."  Colo. Rev. Stat. § 18-7-101(6).

Section 18-7-102(2)(a) imposes criminal liability on a person who (1) promotes or possesses with intent to promote (2) obscene material (3) knowing its contents and character.  Colo. Rev. Stat. § 18-7-102(2)(a); *see also People v. Ford,* 773 P.2d 1059, 1068 (Colo. 1989).  In holding that the obscenity statute was not vague or overbroad, the

Colorado Supreme Court held that the statute satisfies the constitutional requirement of scienter by mandating "that a particular defendant act 'knowingly,' which is a clearly defined mental state." *See Ford,* 773 P.2d at 1068-69. *See also Hamling v. United States,* 418 U.S. 87, 94 (1974) (holding that "[i]t is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials"); *Smith v. California,* 361 U.S. 147, 150-54 (1959) (addressing the necessity of proof of scienter for an obscenity conviction to avoid the dangers of self-censorship); *New York v. Ferber,* 458 U.S. 747, 765 (1982) (recognizing that "[a]s with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant.").

Moreover, the United States Supreme Court has established a "presumption in favor of a scienter requirement [applying] to *each* of the statutory elements that criminalize otherwise innocent conduct." *See In X-Citement Video Inc.,* 513 U.S. 64, 70-72 (1994) (holding that the term "knowingly" applied to elements of the crime concerning the age of the performers and the sexually explicit nature of material, despite a natural grammatical reading of the statute under which the scienter element would apply only to the "transport" element). Thus, under Colorado's promotion of obscenity statute, the mental state of "knowingly" applies to each of the statutory elements that criminalize otherwise innocent conduct, which includes the "promotes" element. In other words, for Mr. Goldsworth to have been guilty of promotion of obscenity, the prosecution had to introduce sufficient evidence to allow a reasonable juror to conclude that Mr. Goldsworth knowingly promoted obscene material knowing its content and character beyond a reasonable doubt.

**B.     Trial**

At trial, the prosecution called six witnesses and submitted two exhibits into evidence, including the photograph found in the student computer lab and a printing log. The printing log showed that user "jgoldswo" printed thirty-three pages from pornographic websites at a computer lab at the Colorado State University on May 19, 2010. (*See* ECF No. 27, Trial Ex. 2, "jgoldswo" printing log). Thirty pages were sent to the color printer that required Mr. Goldsworth to log in to the color printer kiosk right next to the printer to confirm each document to be printed, and three documents from pornographic websites were sent to the two black and white printers that would queue print tasks from multiple users in the computer lab. (*See id.*; *see also* ECF No. 14-10, 4/25/11 Trial Tr. at 188:12-193:15). Computer lab patrons testified that while retrieving their documents at the black and white printers, they encountered at least one pornographic image. (ECF No. 14-10, 4/25/11 Trial Tr. at 129:7-133:1; 147:4-148:23; 156:4-158:20; 165:14-166:25; 177:10-179:20; 184:23-186:20). The prosecution also introduced a video of the computer lab on May 19, 2010. (ECF No. 27, Trial Ex. 3, computer lab video).

The jury was instructed that to find Mr. Goldsworth guilty of promotion of obscenity, the prosecution had to prove beyond a reasonable doubt that Mr. Goldsworth "knowing its content and character promoted or possesses [sic] with the intent to promote any obscene material." (*See* ECF No. 14-2, at 29, 37, Jury Instruction Nos. 4, 12). The jury instructions also provided the statutory definition of "promote." (*Id.,* at 40, Jury Instruction No. 15). The jury returned a guilty verdict for promotion of obscenity, and Mr. Goldsworth was sentenced to five years supervised probation. (*Id.,* at 48, Verdict form).

## C.    Postconviction Proceedings

Mr. Goldsworth appealed his conviction to the Larimer County District Court. In

rejecting Mr. Goldsworth's claims, the Larimer County District Court, sitting in its appellate capacity, stated:

> When reviewing the sufficiency of evidence in supporting a guilty verdict, the reviewing court should determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Atencio*, 140 P.3d 73, 75 (Colo. App. 2005). The reviewing court should "give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence."
>
> Here, the evidence supports the following facts: Appellant accessed a number of pornographic sites while logged into a computer at the Shepardson computer lab on the CSU campus. Appellant printed several pornographic images, most to a color printer that required him to manually log in to a kiosk and print the images. Three pornographic images were sent to a black and white printer where they printed in a queue with other students' documents. As students sorted through the printed papers to retrieve their documents, they viewed the pornographic images. At least one of the images showed a scene of explicit sexual intercourse with a lewd exhibition of male and female genitalia. The evidence here supports a finding that the photograph classifies as obscenity under C.R.S. § 18-7-101(2).
>
> Again, section 18-7-101(6) includes in its definition of "Promote" as "presenting" or "exhibiting" material. Here, the prosecution introduced video of Appellant watching students' reactions to discovering the pornographic photographs on the printer in the lab. The jury could infer from this that Appellant had knowingly printed the documents to get a reaction from fellow students and therefore "promoted" the obscene photographs by presenting them to others as prohibited by C.R.S. § 18-7-101(6). Accordingly, the Court finds that the evidence, taken as a whole in a light most favorable to the prosecution, does sufficiently support a conviction for promotion of obscenity.
>
> To the extent that Appellant argues that the obscenity statute is unconstitutionally applied to the facts of this case, the Court is not persuaded.  The jury found there was sufficient evidence that Appellant had the required mental state to commit the crime. A thorough review of the transcript and record below leads this Court to conclude that there was sufficient evidence for the jury to conclude that Appellant had knowingly printed the photographs. The Court holds that the statute was applied constitutionally in this case.

(ECF No. 25-4, at 10-11).

On March 2, 2015, Mr. Goldsworth filed the Application for habeas corpus relief, again contending that the evidence was insufficient to sustain his conviction.  Specifically, he asserts that he did not "possess the requisite culpable mental state of 'knowingly' promoting the material in question."  (ECF No. 1, at 14-18).  Mr. Goldsworth also argues that proof that he printed "a document or image at a common printer used by the general student populate" is not equivalent to proof that he "promoted" or "published" the pornography as defined by law.  (*Id.,* at 18.).

In the Answer, Respondents argue that

> [b]ased upon the evidence presented at trial, a reasonable juror could conclude that Mr. Goldsworth engaged in the promotion of obscenity while using CSU's computer lab because he published, distributed, exhibited, circulated, and disseminated at least one patently offensive image.  See Colo. Rev. Stat. § 18-7-101(6) (including publication, distribution, exhibition, circulation, and dissemination within the definition of 'promote').

(ECF No. 15, at 27).  In support of this argument, Respondents note that a "print job log demonstrates that Mr. Goldsworth printed three images from pornographic websites at a black-and-white printer in CSU's computer lab on May 19, 2010."  (*Id.,* at 28).  Respondents further assert that "a May 19, 2010 video of the computer lab shows Mr. Goldsworth looking at various images on a computer and in the proximity of other lab patrons as they encountered and reacted to the pornographic images at the black-and-white printer."  (*Id.*)

## D.    Merits

Even under the AEDPA's exponential deference, the Court concludes that the evidence was not sufficient to convict Mr. Goldsworth of promotion of obscenity.  First, the Larimer County District Court unreasonably determined from the evidence presented at trial

that Mr. Goldsworth "watch[ed] students' reactions to discovering the pornographic photographs" that printed on the black and white printers. (ECF No. 25-4, at 10). Although Mr. Goldsworth disputes that he actually printed the pornographic images in question, this Court agrees with the state court's factual finding that Mr. Goldsworth printed three photographs from pornographic websites via the black and white printers in the student computer lab on May 19, 2010. (*See* ECF No. 27, Trial Ex. 2, at 2; *see also* ECF No. 14-10, 4/25/11 Trial Tr. 190:12-192:19). This Court further agrees with Respondents that the evidence supports a finding that Mr. Goldsworth was "in the proximity" of other lab patrons when they encountered the pornographic images. (ECF No. 27, Trial Ex. 3, computer lab video at 1:09-1:12).

This Court, however, cannot agree with the Larimer County District Court's factual finding that "the prosecution introduced video of [Mr. Goldsworth] *watching* students' reactions to discovering the pornographic photographs on the printer in the lab." (ECF No. 25-4, at 10) (emphasis added). After careful review of the video, the Court finds that Mr. Goldsworth was seated at a computer facing the black and white printers, and that he continued scrolling through images from various websites while students in the computer lab encountered the pornographic images at the black and white printers. (*See* ECF No. 27, Trial Ex. 3, computer lab video at 1:09-1:12). Nothing in the video or Mr. Goldsworth's body language indicates that he observed or even acknowledged the students at the black and white printers. (*Id.*). Moreover, no witnesses testified that Mr. Goldsworth watched or observed the lab patrons as they discovered the pornographic photographs. In fact, one witness testified that after looking around at the students in the computer lab, "no one seemed suspicious at that time." (*See* ECF No. 14-10, 4/25/11 Trial Tr. at 131:6-10). The

-15-

Court finds that the computer lab video itself constitutes clear and convincing evidence to rebut the presumption that the state court's factual finding is correct. *See* 28 U.S.C. § 2254(e)(1). Accordingly, the Court concludes that the Larimer County District Court's finding that "the prosecution introduced video of [Mr. Goldsworth] watching students' reactions to discovering the pornographic photographs" was an unreasonable determination of the facts in light of the evidence presented at trial. *See* 28 U.S.C. § 2254(d)(2).

Moreover, this Court finds that the Larimer County District Court unreasonably applied "clearly established Federal law" to the facts. *See* 28 U.S.C. § 2254(d)(1). The Larimer County District Court concluded that the jury could infer from the computer lab video that Mr. Goldsworth "had knowingly printed the documents to get a reaction from fellow students and therefore 'promoted' the obscene photographs by presenting them to others as prohibited by C.R.S. § 18-7-101(6)." (ECF No. 25-4, at 10). This Court cannot find any evidentiary basis for such an inference. *See Torres,* 461 F.3d at 1313 (rejecting the argument that the jury could infer from trial testimony, in the absence of any supporting evidence, that the letter was sent in retaliation for the arson report where "[s]uch an inference is infirm because it is not based on the evidence."). It is well-established that "the inference in question must be 'more likely than not to flow' from the facts already established." *See Leary v. United States,* 395 U.S. 6, 36 (1969).

Here, although it may be logical to assume that Mr. Goldsworth knowingly printed three pornographic images to the black and white printers to get a reaction from fellow students, there was *no evidence* that he had indeed done so. Moreover, the evidence at trial is equally consistent with an inference that Mr. Goldsworth mistakenly sent three

pornographic images to the black and white printers instead of the color printer, and that he was not even aware that other students had discovered the pornographic images he had inadvertently sent to the black and white printers.  The "more likely than not" standard for inferences required by Supreme Court precedent was not satisfied in this case.  The state court record simply does not allow a reasonable inference that Mr. Goldsworth knowingly printed pornographic photographs to the black and white printers to get a reaction from fellow students.  Thus, the Larimer County District Court unreasonably applied clearly established Federal law to the facts of this case.

The Court also is convinced that the Larimer County District Court's conclusion regarding the sufficiency of the evidence standard under *Jackson* as to the essential element of "knowingly promotes" was erroneous.  The more difficult question is whether it was also "unreasonable" under the AEDPA.

In determining that there was sufficient evidence that Mr. Goldsworth had the required mental state to promote obscenity, the Larimer County District Court concluded that there was "sufficient evidence for the jury to conclude that [Mr. Goldsworth] had knowingly printed the photographs."  (ECF No. 25-4, at 10-11).  Thus, the state court decision conflates *printing* obscene photographs with *promoting* obscene photographs, absent any other evidence indicating the culpable mental state.  Despite a long list of operative verbs, the obscenity statute does not include the verb "to print."  *See* Colo. Rev. Stat. § 18-87-101(6) (defining promote as "to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same.").  Conflating "knowingly printed" with knowingly promoted was not only error; it was unreasonable because it allowed Mr.

Goldsworth to be convicted on something less than proof "of every element of the offense" beyond a reasonable doubt.  *See Jackson,* 443 U.S. at 316.

Moreover, the term "promotes" in the context of the rest of the statute and in light of the definition provided by the legislature, has a transactional connotation as explained in *United States v. Williams,* 553 U.S. 285 (2008).  In *Williams*, the defendant was charged with one count of pandering child pornography under 18 U.S.C. § 2252A(a)(3)(B), which criminalizes, in certain specified circumstances, the pandering or solicitation of child pornography.  *Id.* at 288.  The relevant provision imposes criminal liability on any person who "knowingly (B) advertises, promotes, presents, distributes, or solicits . . . any obscene visual depiction of a minor engaging in sexually explicit conduct."   18 U.S.C. § 2252A(a)(3)(B).  In holding that the statute was not overbroad or impermissibly vague, the United States Supreme Court explained that the statute includes a scienter requirement of "knowingly."  553 U.S. at 294.  The Supreme Court further noted that "the statute's string of operative verbs—'advertises, promotes, presents, distributes, or solicits'—is reasonably read to have a transactional connotation."  *Id.*  In other words, "the statute penalizes speech that accompanies or seeks to induce a transfer of child pornography . . . from one person to another."  *Id.*  The Supreme Court further explained that "[a]dvertising, distributing, and soliciting are steps taken in the course of an actual or proposed transfer of a product."  *Id.*  The Supreme Court continued that while "promotes" and "presents" are susceptible to multiple and wide-ranging meanings, "[i]n this context, however, those meanings are narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated."  *Id.*  Accordingly, "'[p]romotes,' in a list that includes 'solicits,' 'distributes,' and

'advertises,' is most sensibly read to mean the act of recommending purported child pornography to another person for his acquisition." *Id.* at 294-95, 300 (recognizing that the term "promotes" refers to "the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer."). The Supreme Court concluded that "[s]imilarly, 'presents,' in the context of the other verbs with which it is associated, means showing or offering the child pornography to another person with a view to his acquisition." *Id.* at 295. Finally, the Supreme Court noted that "our conclusion that all the words in this list relate to transactions is not to say that they related to *commercial* transactions." *Id.*

This transactional understanding of the terms "promote" and "present" in the *Williams* case is applicable to the definition of "promote" in Colorado's obscenity statute. Promote is defined by the following string of verbs: "to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise." Colo. Rev. Stat. § 18-7-101(6). In this context, common sense dictates that "promote" must relate to the act of initiating a transfer of obscenity from one person to another with a view to his acquisition. In other words, to run afoul of the statute, the term "promote" is most sensibly read to mean the *intended* transfer of obscene material "to another person *for his acquisition.*" *See Williams,* 553 U.S. at 295, 300 (emphasis added).

Moreover, as noted above, the promotion must be done knowingly. *See X-Citement Video,* 513 U.S. at 72 (recognizing the presumption of a scienter requirement applying to each of the statutory elements that criminalize otherwise innocent conduct). Under Colorado law, a person acts "knowingly" with respect to conduct or to circumstances described by a statute defining an offense "when he is aware that his conduct is of such

nature or that such circumstances exists.   A person acts 'knowingly' or 'willfully', with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."   Colo. Rev. Stat. § 18-1-501(6).   Thus, for Mr. Goldsworth to have been guilty of promotion of obscenity, the prosecution had to introduce sufficient evidence to allow a reasonable juror to conclude beyond a reasonable doubt that Mr. Goldsworth was aware that his conduct "promoted" obscene material as the term is defined and understood by law.

The Court finds that no evidence was presented to the jury to prove the critical fact that Mr. Goldsworth acted with knowledge that his conduct in the computer lab would "promote" obscenity.   The state court record confirms that Mr. Goldsworth printed thirty pages from pornographic websites via the color printer and printed three pornographic images via the black and white printers, and that he was seated at a computer facing the black and white printers when students encountered the obscene material.   (*See* ECF No. 27, Trial Ex. 3, computer lab video at 1:09-1:12).   In an apparent attempt to satisfy the "promotes" element, the Larimer County District Court determined that "the jury could infer from [the computer lab video] that [Mr. Goldsworth] had knowingly printed the documents to get a reaction from fellow students and therefore 'promoted' the obscene photographs by presenting them to others."   (ECF No. 25-4, at 10).   But as explained above, this inference as to the proof of the essential element of knowingly promotes is a "mere possibility" without any evidentiary basis for such an inference.   *Torres,* 461 F.3d at 1313. In the absence of any evidence that could lead a rational juror to infer that Mr. Goldsworth knowingly initiated a transfer of obscene material to another person for his or her acquisition of that material, the prosecution failed to prove an essential element of the

crime—that Mr. Goldsworth knowingly promoted obscene material as the term is defined and understood in the context of the statute.

Failure to prove the essential elements of a crime beyond a reasonable doubt renders a conviction for that crime a violation of the Due Process Clause of the Fourteenth Amendment. *See Fiore v. White,* 531 U.S. 225, 228-29 (2001). Thus, even with the deference afforded to state court decisions on this issue, federal habeas courts have found constitutionally insufficient evidence in circumstances where proof of an essential element was based solely on conjecture. *See e.g., Torres,* 461 F.3d at 1304 (holding that "[e]ven under AEDPA's exponential deference, we conclude that the evidence was not sufficient to convict" petitioner of witness retaliation where there was no evidentiary basis for such an inference); *Kamienski v. Hendricks,* 332 Fed. App'x 740, 751-52 (3d Cir. May 28, 2009), *cert. denied,* 130 S. Ct. 1168 (2010) (finding that the state court unreasonably applied the standard governing when inferences may be relied upon to establish criminal intent beyond a reasonable doubt and explaining that "when no direct evidence is available" then there must "be a logical and convincing connection between the facts established and the conclusion inferred"). The fact that Mr. Goldsworth printed three pornographic images via the black and white printers and that he was seated at a computer in proximity to those printers hardly suffices for proof beyond a reasonable doubt that he knowingly "promoted" obscene material to other students at the computer lab.

As such, the Court finds that the Larimer County District Court's decision was objectively unreasonable because "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law" in determining that there was sufficient evidence to convict Mr. Goldsworth of promotion of obscenity. *See*

*Maynard,* 468 F.3d at 671.

## IV.  CONCLUSION

For the reasons discussed above, the Court concludes that the evidence was insufficient to support Mr. Goldsworth's conviction for promotion of obscenity, in violation of due process, and accordingly, he is "in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a).  He is therefore entitled to habeas relief as to Claims 1(b) and 3 with regard to his conviction.  Because this grant is based upon insufficiency of the evidence, the writ of habeas corpus should be granted unconditionally.  *See Douglas v. Workman,* 560 F.3d 1156, 1176 (10th Cir. 2006) (holding that the classic example of irremediable error necessitating grant of unconditional writ is when a new trial would violate the Double Jeopardy Clause); *Lockhart v. Nelson,* 488 U.S. 33, 39 (1988) (holding that when a defendant's conviction is reversed on the sole ground that evidence was insufficient, the Double Jeopardy Clause bars a retrial on the same charge).

In all other respects, Mr. Goldsworth's Application is **denied**.  Under 28 U.S.C. § 2253(c), a prisoner may not appeal the denial of his habeas application unless the presiding court issues a certificate of appealability ("COA)".  A COA is required where the petitioner to whom a writ has been granted on one ground asserts, in opposition to the state's appeal, a ground that the district court rejected.  *Jones v. Keane,* 329 F.3d 290, 296-97 (2d Cir. 2003).  A COA will not issue unless the prisoner makes "a substantial showing of the denial of a constitutional right."  *Id.*  This requires a prisoner to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 537 U.S.

322, 336 (2003).  The Court concludes that Claims 1(a) and 2 in the Application do not meet this standard.  Thus, in the likely event Respondents appeal this decision, Mr. Goldsworth is not entitled to re-assert them as additional bases for relief.  Accordingly,

IT IS HEREBY **ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **GRANTED** as to Claim 1(b) and 3 and that Mr. Goldsworth shall be released and discharged from his conviction of promotion of obscenity, Colo. Rev. Stat. § 18-7-102(2).


DATED December 1, 2015.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge